Daniel G. Dowd (012115)
Daniel E. Durchslag (017213)
**COHEN DOWD QUIGLEY P.C.**
2425 East Camelback Road, Suite 1100
Phoenix, Arizona 85016
Phone: (602) 252-8400
Fax: (602) 252-5339
Email: ddowd@CDQlaw.com
ddurchslag@CDQlaw.com
*Attorneys for Defendants*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>WVSV HOLDINGS, L.L.C.,<br><br>　　　　　Debtor. | Chapter 11 Proceeding<br><br>Adversary Case No. 2:20-ap-00060-MCW<br><br>Lead Bankruptcy Case No.:<br>2:12-bk-10598-MCW |
| WVSV HOLDINGS, LLC,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>10K, LLC; LEO BEUS & ANNETTE BEUS; PAUL GILBERT & SUSAN GILBERT; RANDY STOLWORTHY & KARI STOLWORTHY,<br><br>　　　　　Defendants. | **DEFENDANTS' MOTION TO DISMISS DEBTOR WVSV HOLDINGS, LLC'S COMPLAINT**<br><br>**(Oral argument requested)** |

Creditor 10K, L.L.C. ("10K") has spent over 17 years seeking a remedy for the wrongs perpetrated against it by Debtor WVSV Holdings, LLC ("WVSV"), and its agent, Conley Wolfswinkel. Final, non-appealable judgments from Arizona Superior Court have found WVSV liable for over $72 million in damages for tortiously aiding and abetting breaches of fiduciary duty by 10K's former manager, Phoenix Holdings II, LLC ("PHII") and for committing fraud on the trial court. Now that 10K has finally secured an enforceable judgment against WVSV and Wolfswinkel, and obtained an order from this Court detailing the manner in which WVSV's one asset (the "Sun Valley Property") will be sold to try to satisfy 10K's claims, WVSV filed a new lawsuit against 10K and three individuals with indirect interests in 10K, Leo Beus, Paul Gilbert, and Randy Stolworthy (collectively with their spouses, the "Individual Defendants"). [*See* Doc 641 (Adversary Doc. 1), Exhibit 1(D) ("Complaint").]

In this new filing, WVSV claims that one remedy 10K sought in the state court litigation in 2003 – the invalidation of the agreement by which WVSV took control over the Sun Valley Property (the "2002 Breycliffe Agreement") – somehow supports imposing $300 million in damages against Defendants and delaying yet again WVSV's obligation to finally pay 10K. WVSV's lawsuit is not only meritless, it violates all notions of equity and justice, and directly disrespects the Order entered by this Court just months ago, on September 16, 2019. Pursuant to Fed.R.Bankr.P. 7012 and Fed.R.Civ.P. 12(b)(6), WVSV's lawsuit must be dismissed for multiple, independently dispositive reasons, including that WVSV's claims are barred by judicial estoppel, equitable estoppel, the Noerr-Pennington doctrine, 10K's litigation privilege, the statute of limitations, and failure to plead a plausible claim.

## I. Relevant Background Facts.

In June 2002, 10K's manager (PHII) agreed to sell 10K's only asset, over 10,000 acres of valuable real estate in the West Valley known as the Sun Valley Property, on one-sided terms to Breycliffe, LLC, an entity PHII knew was incapable of closing on the purchase. [*See* Ruling dated December 21, 2015 in Maricopa County Superior Court Case #CV2003-08362

. . .

(the "State Court Litigation"), attached as Exhibit 1, ¶¶ 22, 23.][1] Over 10K's objection, PHII then brokered Breycliffe's position in the 2002 Breycliffe Agreement to WVSV, which secretly agreed to pay PHII a private profit participation. [*See id.*, ¶¶ 31, 37, 38.] In May 2003, 10K sued PHII and WVSV, seeking, among other relief, a declaration that the 2002 Breycliffe Agreement was invalid. [*Id.*, ¶ 58.] One month later, in June 2003, the Superior Court dismissed the declaratory judgment claim, and that dismissal was affirmed on appeal in January 2005. *See Cal X-Tra v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, 385, ¶¶ 18, 21 (App. 2012).

In a separate action filed in 2006 by 10K based on new evidence revealing extrinsic fraud by WVSV and others, the Superior Court vacated the 2003 dismissal of the declaratory judgment claim. *See Cal X-Tra*, 229 Ariz. at 391, ¶ 42. 10K renewed its pursuit of the declaratory judgment claim after the Arizona Court of Appeals issued its Opinion in April 2012 affirming that ruling. *See id.* at 398, ¶ 72. Immediately following that Opinion, and before 10K could file an amended complaint, WVSV filed for bankruptcy protection. [Doc. 1.] In November 2013, after obtaining stay relief from the Bankruptcy Court, 10K was finally able to file its amended complaint in the State Court Litigation and reassert the declaratory judgment claim that had been dismissed years earlier in 2003. [*See* Third Amended Complaint, attached as Exhibit 2, ¶ 66, 129-142.] WVSV did not then (or ever) assert counterclaims against 10K or a 10K member based on 10K's pursuit of the declaratory judgment claim.

In March 2014, this Court confirmed 10K's First Amended Plan of Reorganization, stating: "The 10K Plan, this Order and the documents incorporated herein are the controlling documents which govern the treatment of all creditors' claims." [Doc. 370.] In January 2017, after a lengthy bench trial, the Superior Court awarded 10K $67 million on its

---

[1] This Court can consider the ruling without converting 10K's motion to dismiss into a motion for summary judgment because the State Court Litigation is the basis of WVSV's claims, and filings in that case are central to the Complaint. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). This Court can also take judicial notice of public filings from a related lawsuit on a motion to dismiss. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988) (holding that district court properly took judicial notice of the proceedings and determinations of related litigation on a motion to dismiss).

aiding and abetting breach of fiduciary duty claim, but denied its declaratory judgment claim. The judgment was affirmed on appeal in November 2018. *See 10K, L.L.C. v. W.V.S.V. Holdings, L.L.C.*, No. 1 CA-CV 17-0155, 2018 WL 5904513, at *16 (Ariz. App. Nov. 8, 2018) (mem. decision) ("[W]e affirm the court's rulings granting damages to 10K on its aiding and abetting a breach of fiduciary duty claim and denying 10K's declaratory judgment claim.")

After the State Court Litigation was concluded and 10K's Class 6 claim was finally quantified, 10K moved to implement the Confirmed Plan by compelling a sale of the Sun Valley Property to satisfy the judgment. [Doc. 568.] WVSV filed its own motion seeking to close the bankruptcy case. [Doc. 566, p. 3 ("With 10K's claim on the Debtor's property having been finally adjudicated in the Debtor's favor, there is nothing left for this Court to do except issue its Final Decree closing this case. That order will vest with the Debtor all remaining property of the estate....").] This Court denied WVSV's motion, and agreed with 10K that the Sun Valley Property should be sold under Bankruptcy Court supervision to satisfy 10K's judgment. On September 16, 2019, after an evidentiary hearing at which the Court considered WVSV's assertions about the alleged harm caused by the State Court Litigation on WVSV's ability to market the Sun Valley Property, the Court allowed WVSV 20 months to market and sell the Property to compensate for the "cloud on the title" from the State Court Litigation. [Doc. 632, p. 5.]

**II. WVSV's Claims Are Barred By Judicial Estoppel.**

Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position and then later seeking another advantage by taking a clearly inconsistent position. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (*citing Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600–01 (9th Cir. 1996), and *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). The doctrine ensures the "orderly administration of justice and regard for the dignity of judicial proceedings," and precludes "a litigant playing fast and loose with the courts." *Id.* (citations and quotations omitted). For that reason, a debtor will be estopped from pursuing a claim not disclosed in the bankruptcy action where the debtor "has knowledge of enough facts to know that a

3

1 potential cause of action exists during the pendency of the bankruptcy, but fails to amend his
2 schedules or disclosure statements to identify the cause of action as a contingent asset."
3 *Hamilton*, 270 F.3d at 784. Estoppel applies with added force here because 11 U.S.C. §
4 521(a)(1) imposed express duties of disclosure on WVSV, and both the Court and WVSV's
5 creditors, including 10K, based their actions on WVSV's schedules and disclosure
6 statements. *See id.* at 783.

WVSV filed its petition for relief under Chapter 11 of the Bankruptcy Code on May
14, 2012. In connection with that filing, WVSV was obligated to list its assets on Schedule B
– Personal Property. [*See* Doc. 1, pp. 8-10.] In the category entitled "Other contingent and
unliquidated claims of every nature, including tax refunds, counterclaims of the debtor and
rights to setoff claims," WVSV selected "None." On May 22, 2012, WVSV filed an
Amendment to Schedule B. Again, it stated "None" in the category of "Other contingent
and unliquidated claims of every nature." [Doc. 17, p. 2.] WVSV did, however, disclose its
dispute with 10K, including 10K's rescission and constructive trust theories, and stated that
if 10K succeeded on its rescission claim, WVSV would then seek counter-restitution for its
expenditures relating to the Sun Valley Property. [*See, e.g.,* Doc. 87, p. 11.] Further, in its
disclosures in connection with its Second Amended Plan of Reorganization, WVSV stated
that if 10K's rescission claim were extinguished, WVSV "will be in the position to fund its
on-going obligation through financing secured by the Real Property, or through sales of the
Real Property." [Doc. 278, p. 22.] However, WVSV did <u>not</u> disclose any contingent,
unliquidated, or potential claim that it intended to assert against 10K if 10K's claims failed.[2]

WVSV's failure to disclose the claims was not inadvertent, as WVSV listed a separate
"unliquidated claim" against Transwestern Pipeline Co. as an asset in its amended schedules.
[Doc. 17, pp. 2, 3.] Moreover, WVSV had a strong motive for not disclosing the newly-
asserted claims. If successful, WVSV stands to have discharged through the bankruptcy the
massive debt owed to 10K (likely for a small percentage of the $130 million it actually owes

---

[2] WVSV clearly knew at that time of the claims it now asserts. Throughout its new Complaint, WVSV alleges that its harm began in 2003 when 10K first sought to invalidate the 2002 Breycliffe Agreement. [Complaint, ¶¶ 9, 14, 109, 111, 115, 124, 132.]

4

to 10K), but then be able pursue claims against 10K seeking damages far in excess of the amount WVSV will ultimately pay.

WVSV's conduct is the essence of "playing fast and loose with the courts." 10K would not have proposed the Plan that this Court ultimately confirmed (or entered the settlement incorporated therein) had WVSV disclosed that it intended to later file a $300 million suit against 10K for seeking declaratory relief in the State Court Litigation. This is the precise harm that judicial estoppel prevents. WVSV is judicially estopped from asserting its slander of title, aiding and abetting, and declaratory judgment claims, which are based on 10K's supposedly wrongful pursuit of title (beginning in 2003) to the Sun Valley Property. [Complaint, ¶¶ 122, 128, 149, 162.] *See Hamilton* 270 F.3d at 784 (applying judicial estoppel where debtor did not provide notice of claims in his disclosure statements and schedules); *Harwood v. Crestar Mortg.*, 2012 WL 12874298, at *6 (D. Ariz. Dec. 17, 2012) (applying judicial estoppel where "[a]ny monetary reward Plaintiff received now would not be reachable by her creditors because of the previous discharge–precisely the motive that many courts have found mandates the application of judicial estoppel."). This result is required even if WVSV claims it did not yet have all of the information necessary to pursue its claims. *See Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992) (applying judicial estoppel where "enough was known to require notification of the existence of the asset to the bankruptcy court").

**III. WVSV Is Barred From Pursuing the New Claims Because It Has Already Received Relief From The Bankruptcy Court For The Alleged Cloud On Title.**

A. <u>WVSV's Claims Are Barred By Equitable Estoppel</u>.

The doctrine of equitable estoppel "adjust[s] the relative rights of parties based upon consideration of justice and good conscience." *United States v. Georgia-Pac. Co.*, 421 F.2d 92, 95 (9th Cir. 1970). Equitable estoppel applies where: (1) the party to be estopped knows the facts; (2) the party to be estopped intends that his conduct shall be acted on or acts in a manner that leads the party seeking estoppel to believe it is so intended; (3) the party seeking estoppel is ignorant of the true facts; and (4) the party seeking estoppel relies on the other

5

party's conduct to his injury. *Id.* at 96. "It may be said generally then that equitable estoppel, as a principle of equity jurisprudence, stands for the basic precepts of common honesty, ordinary fairness, and good conscience, in dealing with the rights of those whose conduct has been prompted by reasonable good-faith reliance upon the knowing acts or omissions of another." *First Nat. Bank of Portland v. Dudley*, 231 F.2d 396, 401 (9th Cir. 1956) (internal citation omitted). Here, WVSV argued passionately to this Court about the appropriate relief for the alleged cloud 10K created on title to the Sun Valley Property. In doing so, WVSV never disclosed that it held claims against 10K for the same alleged misconduct and intended to later seek different and inconsistent relief. 10K relied on WVSV's non-disclosures to 10K's detriment. The Court fully considered WVSV's position in granting appropriate relief. Equitable estoppel precludes WVSV from pursuing the non-disclosed claims and seeking relief fundamentally inconsistent with that granted by this Court.

Following the final disposition of the State Court Litigation, 10K filed a Motion to Implement Confirmed Plan of Reorganization, asking the Court to order that "the Estate property be disposed of to satisfy claims as is necessary to implement the Plan." [Doc. 568, p. 2.] WVSV opposed implementation, arguing that a sale of the property was not contemplated under the Plan. WVSV specifically argued:

> The Court should also bear in mind that Debtor was prevented, for more than seven years, from selling any portion of the Property because of 10K's constructive trust and rescission claims. Now that Debtor has finally defeated those claims in state court, 10K is trying to force it to sell the remainder of the Property for a credit bid, with no meaningful exposure to the market. That would be an inequitable result, especially in light of the fact that Debtor has made $23,789,791 in expenditures that directly benefited the Property, including payments to senior lien holders, tax claimants, and the like.

[Doc. 576, p. 12.] The Court agreed with 10K that the property should be sold to implement the Plan and pay WVSV's debt to 10K. The Court further rejected the notion that the parties should be required to return to state court:

> The plan expressly allowed jurisdiction of the court to remain. In addition the plan expressly provided that the subdegral (sic) property was to remain property of the estate. And what that signals to the Court is that that property was to be administered in this forum and that the **parties were not to be sent**

**back to state court to have further litigation and further cost and expense and exposure**.

[Doc. 614, p. 11 (emphasis added). *See also* Doc. 605.]

On August 28, 2019, at WVSV's request, this Court held an evidentiary hearing. During that hearing, WVSV litigated the impact of, and appropriate remedy for, the alleged impairment caused by the State Court Litigation on WVSV's ability to sell the Property. WVSV argued:

> In considering the testimony of these witnesses, the Debtor-related parties would ask that the court keep the following in mind:
>
> 1. When the underlying contract was negotiated by the parties in 2002, it was agreed that Debtor would have twenty years to market and sell the property before any payment would be due to 10K (the 2002 contract will be one of Debtor's exhibits at the evidentiary hearing);
>
> 2. Because 10K almost immediately attacked the validity of the sale and asserted claims for constructive trust and rescission, it placed a cloud on title that effectively deprived Debtor of the bargained for marketing period;
>
> 3. When Debtor did try to sell a portion of the property, in 2013, 10K successfully opposed the sale motion by arguing that Debtor could not provide adequate protection for its constructive trust and rescission claims;
>
> 4. Thus, Debtor was deprived of any real opportunity to market and sell the property for more than 15 years[.]

[Doc. 624, p. 5.][3] The Court heard evidence from experts with respect to the value of the property, whether it should be sold at auction or in the market, and the length of time that will be required to market it. WVSV's real estate expert, Howard Weinstein, testified:

> The subject property has been the subject of approximately sixteen (16) years of litigation in which the ownership has been at issue. This has created a stigma that will take some time to remove. Buyers need to know ownership of the property has finally been resolved after litigation going back to 2003.

[Doc. 630, ¶ 5.] Despite arguing and presenting evidence on this issue, WVSV never disclosed that it intended to assert claims against 10K based on the very same alleged injury, including a claim seeking to extend the deadlines under the Junior Trust Agreement.

---

[3] These allegations are nearly identical to the supposedly actionable conduct and injury set forth in WVSV's new Complaint. [See, e.g., Complaint, ¶¶ 26, 62, 113, 167.]

7

Instead, WVSV asked this Court for different <u>and</u> <u>inconsistent</u> relief on the same alleged harm.

On September 16, 2019, the Court ruled that WVSV would be allowed a 20-month period to market and sell the property. The Court specifically took into consideration the impact of 10K's unsuccessful claim to title to the property – again, the precise conduct that is the foundation for WVSV's new Complaint:

> Because the parties have been entrenched in litigation concerning the real property for many years, which litigation included 10K's claim of constructive trust, there has been a cloud on title and WVSV has not recently had the opportunity to market test the land.
>
> From the evidence before the Court, it is clear that a measured period in which the property may be extensively marketed without a cloud on title is the most prudent course of action.

[Doc. 632, p. 4.] WVSV did not appeal the Court's ruling, and it is binding on the parties. *See* Fed. R. Bankr. P. 8002(a)(1) ("[A] notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed."). *See also In re Mason*, 709 F.2d 1313, 1315–16 (9th Cir. 1983) ("An adjudication, and concomitantly an order for relief, is, however, a judgment *in rem*, a conclusive determination of the debtor's status in bankruptcy, and *res judicata* between the actual parties to the proceeding to all the facts and subsidiary questions of law on which it is based.").

Equitable estoppel is a rule of justice which, when applicable, prevails over all other rules. *Georgia-Pac.*, 421 F.2d at 96. Principles of equity compelled WVSV to inform 10K and the Court that WVSV intended to assert the claims in its new Complaint, including that 10K's actions in the State Court Litigation constituted slander of title, wrongful institution of civil proceedings ("WICP"), and breach of the implied covenant of good faith and fair dealing, and that WVSV would seek a 15-year extension of the deadlines set forth in the Junior Trust Agreement. Truthful disclosure would have completely changed 10K's approach to implementing the Plan and, likely, the Court's ruling, as each would have been required to evaluate how the alleged new claims, particularly WVSV's demand for a 15-year extension to sell the Property, would impact the parties' respective rights and obligations.

8

WVSV is equitably estopped from now asserting the claims contained in its Complaint.

B. <u>This Court's Decision Cannot Be Collaterally Attacked</u>.

Once WVSV filed for bankruptcy protection, this Court assumed exclusive jurisdiction over claims relating to its sole asset – its rights to the Sun Valley Property under the Junior Trust Agreement. *See Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363–64 (2006) (holding that "the exercise of exclusive jurisdiction over all of the debtor's property" is a "[c]ritical feature" of a bankruptcy proceeding). This Court's rulings relating to the debtor's property cannot be collaterally attacked through WVSV's new Complaint. *See Gonzales v. Parks*, 830 F.2d 1033, 1035 (9th Cir. 1987) ("Congress' grant to the federal courts of exclusive jurisdiction over bankruptcy petitions precludes collateral attacks on such petitions in state courts"); *Petition of Shortridge*, 20 F.2d 638, 640 (9th Cir. 1927) ("The order of adjudication in bankruptcy and the order appointing receivers in that proceeding are fair upon their face, and are not subject to collateral attack in this court or elsewhere."). WVSV's declaratory judgment claims, at a minimum, constitute a collateral attack on this Court's September 16, 2019 ruling. In the aftermath of this Court's (now final) ruling that WVSV has twenty months to market and sell the Sun Valley Property (Doc. 632, p. 5), WVSV seeks through the new Complaint a 15-year extension of the deadlines in the Junior Trust Agreement (which include the 2023 deadline for WVSV to pay 10K the $45 million required to release the remainder of the property from the Trust). That relief is irreconcilable with – and would effectively overturn – this Court's Order that WVSV has 20 months to sell the property. The Court must dismiss the declaratory judgment claims as an improper collateral attack.

**IV. 10K Is Immunized From Liability For Seeking Redress Through The Courts.**

The Noerr-Pennington doctrine, which arises out of the First Amendment right to petition the courts, immunizes a party from civil liability for engaging in protected petitioning activity. *See, e.g., Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004) (holding that lawsuits are protected by the Noerr-Pennington doctrine because "they are essentially petitions to the courts for redress of grievances"). The Noerr-Pennington doctrine protects

9

Case 2:20-ap-00060-MCW    Doc 5    Filed 03/13/20    Entered 03/13/20 16:11:19    Desc
Main Document    Page 10 of 17

both direct petitions to the court during the course of litigation and also "conduct incidental to the prosecution of the suit." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934 (9th Cir. 2006).

The related absolute litigation privilege protects all statements of a litigant that relate to or are made in connection with a judicial proceeding. *See W. Techs., Inc. v. Sverdrup & Parcel, Inc.*, 154 Ariz. 1, 4 (App. 1986) ("An absolute privilege exists for participants in judicial proceedings.") (*citing Green Acres Trust v. London*, 141 Ariz. 609, 613 (1984)); *Stewart v. Fahey*, 14 Ariz. App. 149, 151 (1971) (act of filing lis pendens was part of a judicial proceeding, absolutely privileged, and would not sustain an action for slander of title).

Each of WVSV's new claims is based on 10K's act of filing and prosecuting its declaratory judgment claim seeking to invalidate the 2002 Breycliffe Agreement and regain control over the Sun Valley Property. [*See, e.g.*, Complaint, ¶¶ 9, 14, 115, 122, 128, 132, 149, 162.] WVSV's Complaint does not allege a single act or statement by any Defendant after 10K initiated the State Court Litigation in May 2003 that occurred outside of the context of the lawsuit. And, the limited conduct allegedly occurring <u>before</u> 10K filed suit included conduct in preparation for litigation and is also immunized. *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) ("Conduct incidental to a lawsuit, including a pre-suit demand letter, falls within the protection of the Noerr–Pennington doctrine.") (*citing Sosa*, 437 F.3d at 936-38); *see also Cellco P'ship v. Hope*, 2012 WL 260032, at *15 (D. Ariz. Jan. 30, 2012) (demand letters could not serve as the basis of improper conduct because they are protected under the Noerr-Pennington doctrine); *Green Acres*, 141 Ariz. at 616 (recognizing that the absolute litigation privilege must protect communications preliminary to judicial proceedings). Defendants had a protected First Amendment right to petition the state court and are absolutely immune from liability for their efforts to invalidate the 2002 Breycliffe Agreement through litigation.

**V.     WVSV Does Not State A Viable Claim For Wrongful Institution Of Civil Proceedings ("WICP").**

The only claim that even potentially escapes the absolute immunity bar is WVSV's allegation that 10K "maliciously" pursued a declaratory judgment claim against WVSV in

litigation where 10K was awarded damages of over $67 million plus attorneys' fees. The WICP claim requires WVSV to establish that 10K instituted a civil action that was motivated by malice, begun or maintained without probable cause, terminated in WVSV's favor and resulted in damage to WVSV. *See Wolfinger v. Cheche*, 206 Ariz. 504, 508–09, ¶ 23 (App. 2003). Absent even one element, the WICP claim fails. *Id.* at 509, ¶ 23. Here, WVSV cannot plausibly allege multiple elements.

First, WVSV cannot plausibly show that the State Court Litigation terminated in its favor. "[T]he favorable termination element is concerned with **the action as a whole**—not just the termination of a single claim." *Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co.*, 2019 WL 4667994, at *7 (D. Colo. Sept. 25, 2019) (emphasis in original). *See also Brown v. City of Glendale*, 2019 WL 160493 (D. Ariz. Jan. 9, 2019) (holding that courts must examine proceedings as a whole to determine whether they were terminated in favor of the plaintiff); *Lane v. Bell*, 20 Cal. App. 5th 61, 68, 228 Cal. Rptr. 3d 605, 609 (2018) (finding it "well settled that the 'favorable termination' element in a malicious prosecution action required an assessment of the judgment as a whole in the prior action."). Here, it is settled that 10K was the prevailing party in the State Court Litigation. After the trial, 10K sought an award of fees from the Superior Court pursuant to A.R.S. § 12-341.01, which permits a fee award only to the successful party. The Superior Court evaluated the totality of the litigation (which included both 10K's aiding and abetting claim and its declaratory judgment claim), determined 10K prevailed, and awarded 10K nearly all of the attorneys' fees it requested. *See 10K, L.L.C. v. W.V.S.V. Holdings, L.L.C.*, 2018 WL 5904513, ¶ 84. Based upon the Superior Court's determination (affirmed on appeal), WVSV is collaterally estopped from arguing that the State Court Litigation terminated in its favor and, thus, its WICP claim fails as a matter of law. *See Herold v. Andlinger & Co.*, 2018 WL 4742945, at *3 (D. Ariz. Oct. 2, 2018) (collateral estoppel requires showing that (1) the issue was actually litigated in the previous proceeding, (2) the parties had a full and fair opportunity and motive to litigate the issue, (3) the state court entered a valid and final decision on the merits, (4) resolution of the issue was essential to the decision, and (5) there was common identity of the parties).

Similarly, WVSV cannot establish that 10K's declaratory judgment claim lacked probable cause. For purposes of a WICP claim, an underlying action had probable cause if it was objectively reasonable. *See Wolfinger*, 206 Ariz. at 510. ¶ 26. 10K pursued a declaration that the 2002 Breycliffe Agreement was unenforceable based on PHII's breaches of fiduciary duty and concealment of its relationship with Breycliffe. [Third Amended Complaint, ¶¶ 130-39.] This very misconduct was the basis of other rulings entered in the State Court Litigation and affirmed on appeal. *See 10K, L.L.C. v. W.V.S.V. Holdings, L.L.C.*, 2018 WL 5904513, ¶ 32 (affirming trial court's finding that PHII breached its fiduciary duties to 10K); *Cal X-Tra*, 229 Ariz. at 393, ¶ 54 (holding that 10K made a *prima facie* showing of "Phoenix Holdings' and Breycliffe's identity of interest and complicity in defrauding 10K and concealing the information"). WVSV's conclusory allegations in the Complaint that Defendants "did not have a reasonable belief in the existence of the facts on which their declaratory judgment claim was based" cannot overcome these final, non-appealable rulings and they are fatal to the WICP claim.

**VI.  WVSV's Slander Of Title Claim Is Time-Barred.**

WVSV alleges that 10K's pursuit of its declaratory judgment claim "through two trials and an appeal" constitutes the tort of slander of title. In addition to being conduct for which Defendants have absolute immunity, the claim is facially time-barred.

Slander of title is subject to a one-year limitations period. *See Lansburg v. Fed. Home Loan Mortg. Corp.*, 2012 WL 12870247, at *6 n.10 (D. Ariz. Jan. 5, 2012) (applying one-year period set forth in A.R.S. § 12-541 to bar slander of title claim as untimely). A claim for slander of title accrues once damages result. *State v. Mabery Ranch, Co.*, 216 Ariz. 233, 249, ¶ 74 (App. 2007); *see also Cook v. Town of Pinetop-Lakeside*, 232 Ariz. 173, 177 (App. 2013) ("[L]imitations on a damages claim for slander of title begins to run when damages result."). WVSV alleges that Defendants "disparaged [WVSV's] valid title and ownership in the Sun Valley Property by preparing, filing and pursuing the declaratory judgment claim" in the State Court Litigation in 2003 and harmed WVSV "since the day it closed in July 2003." [Complaint, ¶¶ 9, 149.] Based on WVSV's allegations, it was damaged and its slander of title

12

claim accrued in 2003.[4] The claim is therefore untimely and must be dismissed.

## VII. WVSV Has Not Stated A Plausible Aiding And Abetting Claim.

Count Five of the Complaint is entitled "Aiding and Abetting Tortious Conduct." However, WVSV does not identify a tort that the Individual Defendants allegedly assisted. Instead, the Complaint alleges only contract-based duties:

> 160. 10K owes WVSV the duties of good faith and fair dealing by virtue of their **contractual** relationship via the 2002 Breycliffe Agreement and WVSV /Breycliffe Agreement.
> 161. 10K also owes WVSV certain duties under the **Junior Trust Agreement**.
> 162. 10K breached its duties to WVSV by wrongfully pursuing the invalid claim for declaratory judgment.
> 163. Beus, Gilbert and Stolworthy knew that 10K owed duties to WVSV and knew that 10K's improper attempt to invalidate the 2002 Breycliffe Agreement and subsequent WVSV /Breycliffe Agreement constituted a breach of 10K's duties.
> 164. Beus, Gilbert and Stolworthy gave substantial assistance or encouragement to 10K in 10K's breach of its duties to WVSV.

(Emphasis added). The breach of the implied covenant alleged by WVSV is a contract claim, not a tort claim, which could arise only in the very limited circumstance where there is a "special relationship" between the parties. *See Thomas v. Wells Fargo Bank, Nat. Ass'n*, 866 F. Supp. 2d 1101, 1107 (D. Ariz. 2012) ("Arizona permits the use of tort claims for breach of the implied covenant … in all contracts in which the contracting parties have some special relationship, such as one that is fiduciary in nature.").

WVSV does not allege such a relationship here, nor could it in good faith. Moreover, a claim for aiding and abetting a breach of contract does not exist under Arizona law. *See R. Prasad Indus. v. Flat Irons Envtl. Sols. Corp.*, 2013 WL 2217831, at *8 (D. Ariz. May 20, 2013) ("A breach of contract is not a tort and Prasad has provided no authority—and the Court has found none—recognizing a cause of action for aiding and abetting a breach of contract."); *AGA Shareholders, LLC v. CSK Auto, Inc.*, 589 F. Supp. 2d 1175, 1191–92 (D. Ariz. 2008) (stating that aiding and abetting is a "derivative tort[] for which a plaintiff may

---

[4] At the very latest, the claim accrued in 2005 when WVSV claims it would have otherwise sold the Property. [Complaint, ¶ 118.]

1 recover only if it has adequately pled an independent primary tort." ) (*citing Wells Fargo Bank v. Ariz. Laborers, Teamsters, & Cement Masons*, 201 Ariz. 474, 485 (2002)). Accordingly, WVSV's claim for "aiding and abetting tortious conduct" fails.

### VIII. WVSV Is Not Entitled To Equitable Relief In The Form Of Declaratory Judgments.

Under Arizona law, the "purpose of a declaratory judgment action is to obtain a judicial determination of parties' rights and obligations in a controversy prior to one party's breach of those rights." *Mabery Ranch*, 216 Ariz. at 242–43, ¶ 37. A declaratory judgment serves to clarify and settle legal relations, and can only be granted where it would "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *McGraw-Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d 339, 342 (9th Cir. 1966). When neither of these results can be accomplished, the court should decline to award declaratory relief. *See id.*

The Complaint does not plead the existence of an actual, ongoing controversy between 10K and WVSV and does not seek to clarify or settle legal relations. Instead, WVSV asks the Court to materially alter the terms of the Junior Trust and impose the changes on 10K. [Complaint, ¶¶ 123, 129.] That relief is not available based on the allegations in the Complaint. While a court may reform a written contract where there is "clear and convincing evidence either that a mistake was mutual or that a unilateral mistake by one party is accompanied by fraud or inequitable conduct by the other," *U.S. Fire Ins. v. Gentile*, 147 Ariz. 589, 593 (App. 1985), that situation is not pled here. WVSV does not plead circumstances that could even arguably support the declaratory relief it seeks. This Court cannot impose on 10K contractual provisions to which 10K never agreed and that the parties never discussed, considered, negotiated, or contemplated. *See Olliver/Pilcher Ins., Inc. v. Daniels*, 148 Ariz. 530, 533 (1986) ("Generally, courts do not rewrite contracts for parties."); *Mission Ins. Co. v. Nethers*, 119 Ariz. 405, 408 (App. 1978) (where meaning of contract is clear, "it is not the prerogative of the courts to rewrite the contract in attempting to avoid harsh results").

14
Case 2:20-ap-00060-MCW    Doc 5    Filed 03/13/20    Entered 03/13/20 16:11:19    Desc
Main Document    Page 15 of 17

Moreover, "[o]ne who seeks equity must do equity." *Ariz. Coffee Shops, Inc. v. Phx. Downtown Parking Ass'n*, 95 Ariz. 98, 100 (1963). It has been conclusively determined that 10K (and the Superior Court) were victimized by extrinsic fraud in which WVSV both actively and passively participated. WVSV, joined by Breycliffe, obtained the dismissal of 10K's original declaratory judgment claim in June 2003, a dismissal that was later vacated based on extrinsic fraud. In affirming vacatur, the Court of Appeals stated:

> WVSV had an active role to the extent that Breycliffe (a member and assignor of WVSV) directly participated in the breach of Phoenix Holdings' fiduciary duty to 10K, and WVSV, supported by its member Breycliffe, intervened in the 2002 litigation and sought specific enforcement of the 2002 Mangum Judgment, as well as participated in the 2003 action that produced the Galati Judgments. WVSV also arguably had a passive role to the extent that Wolfswinkel and WVSV were put on notice before the Galati Judgments that the 10K members considered the 2002 Breycliffe Agreement to be a nullity because Phoenix Holdings had exceeded its authority in consummating the agreement without obtaining a two-thirds supermajority approval from the members of 10K. Accordingly, **a balance of the equities** with regard to WVSV's reliance argument in its appeal of the 2006 action **appears to fall decidedly against WVSV**.

*Cal X-Tra*, 229 Ariz. at 398, ¶ 71 (emphasis added). Moreover, WVSV tortiously aided and abetted PHII's multiple breaches of its fiduciary duties to 10K, which directly led to WVSV obtaining the Sun Valley Property. [*See* Exhibit 1, p. 13 ("By furthering his own deal through PHII, Wolfswinkel substantially assisted PHII in violating its fiduciary duties to 10K.").] WVSV is not entitled to equitable relief from this Court.

## IX. Conclusion.

More than three years after judgment was entered in favor of 10K, and only a few months after this Court implemented a process to sell the Sun Valley Property to satisfy that judgment, WVSV filed its profoundly flawed Complaint. WVSV's Complaint is barred by, *inter alia*, judicial estoppel, absolute immunity, equitable estoppel, the statute of limitations, unclean hands, and failure to state a plausible claim on which relief can be granted. The Complaint also impermissibly collaterally attacks this Court's prior ruling. The Complaint should be dismissed and Defendants should be awarded their costs and attorneys' fees.

. . .

RESPECTFULLY SUBMITTED this 13th day of March, 2020.

COHEN DOWD QUIGLEY PC
2425 E. Camelback Road
Suite 1100
Phoenix, AZ 85016

By: /s/ Daniel G. Dowd (012115)
Daniel G. Dowd
Daniel E. Durchslag
*Attorneys for Defendants 10K, L.L.C., Leo Beus, Annette Beus, Paul Gilbert, Susan Gilbert, Randy Stolworthy, and Kari Stolworthy*

COPIES of the foregoing served via mail on this 13th day of March, 2020 to:

Michael W. Carmel
MICHAEL W. CARMEL, LTD.
80 E. Columbus Avenue
Phoenix, AZ 85012-2334
Email: Michael@mcarmellaw.com
*Attorney for Debtor WVSV Holdings, LLC*

Larry Watson
Office of the United States Trustee
230 North First Avenue, Suite 204
Phoenix, AZ 85003-1706
Email: larry.watson@usdoj.gov

Florence M. Bruemmer, Esq.
Law Office of Florence M. Bruemmer, P.C.
42104 N. Venture Drive, Suite A122
Anthem, Arizona 85086
Email: florence@bruemmerlaw.com
*Attorney for Plaintiff WVSV Holdings, LLC*